UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 13-57-DLB-EBA**

**PHILIPPE GEORGEL**                                                                                          **PLAINTIFF**

**vs.**                     **MEMORANDUM OPINION AND ORDER**

**WAYNWRIGHT PREECE, et al.**                                         **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**I.**     **Introduction**

Defendant State Farm Automobile Insurance Company ("State Farm") moves for a ruling on the issue of choice of law with respect to Plaintiff Philippe Georgel's ("Georgel") claim for underinsured motorist ("UIM") benefits. For purposes of Kentucky's choice of law rules, State Farm categorizes Georgel's claim as a contract dispute, and therefore argues that West Virginia law should control pursuant to a choice of law provision contained within the policy itself. If this provision is found not to apply, State Farm argues in the alternative that the most significant relationship test should be used, and that West Virginia law should also govern on that basis. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**II.**     **Factual and Procedural Background**

The relevant facts of this case are straightforward and undisputed. On August 12, 2012, Georgel was riding his motorcycle along Kentucky Route 32, near Louisa, Kentucky, when he was involved in an accident with former Defendant Waynwright Preece ("Preece").

(Doc. # 1 at 2, ¶ 5-8). Preece, a citizen of Kentucky, allegedly turned left from the shoulder lane and "failed to yield the right-of-way" just as Georgel was attempting to pass Preece's pickup truck from behind. (*Id.*) As a result, Georgel "was forced to lay his bike down thereby sustaining severe and permanent physical injuries." (*Id.*)

Prior to the accident, Georgel's motorcycle was garaged and maintained in West Virginia (Doc. # 84 at 2), where Georgel resided (Doc # 1 at 1, ¶1). The motorcycle was insured by a policy from State Farm, which Georgel also purchased in West Virginia. (Doc. # 84 at 2). The State Farm policy offers UIM benefits, providing specifically that "[State Farm] will pay compensatory damages for bodily injury and property damage an insured is *legally entitled* to collect from the owner or driver of an underinsured motor vehicle." (Doc. # 83-1 at 10) (emphasis added).

Georgel filed this lawsuit on May 2, 2013, alleging Preece was at fault and seeking damages for the injuries he sustained during the accident. (Doc. # 1 at 2-4, ¶ 8-14). Georgel and Preece eventually resolved their claim, and Preece was dismissed from the action on February 6, 2014. (Doc. # 58). However, because Preece's pickup truck was underinsured, Georgel also named State Farm as a defendant, claiming that "[State Farm] is contractually obligated to compensate the Plaintiff for all damages he is legally entitled to recover under the underinsured provisions set forth in the policy of insurance." (Doc. # 1 at 3, ¶ 12).

Among its numerous defenses, State Farm maintains that Georgel cannot recover UIM benefits because his own comparative fault would preclude judgment against Preece. (Doc. # 7 at 4); (Doc. # 84 at 4-5). In other words, if Georgel is not "legally entitled" to recover from the underinsured driver, he is likewise not entitled to receive UIM benefits

2

based on State Farm's policy.[1] Of course, the likely success of this argument is much greater under West Virginia law, which embraces the doctrine of modified comparative negligence, and thus bars recovery for a plaintiff who is fifty (50) percent responsible, or more, for his own damages. Accordingly, State Farm filed the instant motion, seeking a ruling from this Court regarding the issue of choice of law, and requesting specifically that the law of West Virginia be used to decide Georgel's claim. (Doc. # 83 at 1).

### III. Analysis

#### *1. Applicable Law*

"Under the long-standing Erie doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007). Thus, when choice of law is at issue, "[a] federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In other words, "a federal court in a diversity action is obligated to apply the law it believes the highest court of the state would apply if it were faced with the [same] issue." *Id.* (citation omitted). Accordingly, Kentucky's choice of law rules will be applied in resolving this motion.

---

[1] As a corollary to this argument, one might also contend that Preece's settlement and dismissal should bar Georgel from recovery against State Farm. However, the Kentucky Supreme Court addressed this very issue in *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 900 (Ky. 1993), concluding "that it does not abrogate UIM coverage to settle with the tortfeasor and his carrier."

3

## *2. The Conflict of Law*

A choice of law analysis is required only when the law of two states would dispose of the same issue differently. *See Asher v. Unarco Material Handling, Inc.,* 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010). In this case, the conflict of law arises from a section of the policy entitled "Underinsured Motor Vehicle Coverage." (Doc. # 83-1 at 10). Within that section, in the first sentence of the paragraph immediately below the heading "Insuring Agreement," the policy states, "[State Farm] will pay compensatory damages for bodily injury and property damage an insured is *legally entitled* to collect from the owner or driver of an underinsured motor vehicle." (*Id.*) (emphasis added). In effect, the term "legally entitled" acts as a condition to receiving UIM benefits. And, as both parties have recognized, Georgel's ability to satisfy this condition depends largely upon which state's comparative negligence doctrine controls

Comparative negligence differs from the traditional concept of contributory negligence in that, under the former, a plaintiff may recover damages despite having been assigned a percentage of the overall fault. *See Kentucky Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797, 802 (Ky. 2005). West Virginia applies the doctrine of "modified" comparative negligence. *Everly v. Columbia Gas of West Virginia, Inc.*, 301 S.E.2d 165, 166 (W.Va. 1982). Under this approach, a plaintiff may recover "so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." *Id.* (quoting *Bradley v. Appalachian Power Co.*, 256 S.E.2d 879, 885 (W.Va. 1979)). By contrast, Kentucky has adopted a scheme of "pure" comparative negligence, meaning "liability for any particular injury [is determined] in direct proportion to fault." *Kentucky Farm Bureau*, 177 S.W.3d at 803. Thus, unlike in West Virginia, a Kentucky

plaintiff can recover despite being fifty (50) percent responsible, or more, for the damages at issue. In both states, however, a plaintiff's recovery is offset by his proportionate share of the overall fault. *See id.*; *Bradley*, 256 S.E.2d at 883.

Considering the difference between these doctrines, and bearing in mind State Farm's intention to prove by expert testimony that Georgel is primarily to blame (Doc # 84 at 5), choice of law is clearly a central issue. Simply put, if Kentucky law controls, Georgel will receive the UIM benefits he is entitled to under the policy (albeit reduced by his proportionate negligence). If, however, West Virginia law is applied, Georgel could be barred from recovery entirely if his comparative fault is fifty (50) percent or greater.

### 3. *Application of Kentucky's Choice of Law Rules*

Having recognized that a conflict of law of exists, it is now appropriate to apply Kentucky's choice of law rules. *Asher,* 737 F.Supp.2d at 668. The first step is to identify the substantive area of law from which the instant claim arises. *See Petro v. Jones*, Case No. 11-151, 2013 WL 756756, at *7 (E.D. Ky. Feb. 27, 2013) (citing *Miller Truck Lines, LLC v. Cent. Refrigerated Serv., Inc.*, 781 F. Supp. 2d 488, 491 (W.D. Ky. 2011)). If the claim sounds in tort, the *significant contact test* applies. *Id.* And where the claim sounds in contract, a choice of law provision within the contract itself may ultimately control; however, if none exists, or if the provision does not apply to the conflict at issue, the *most significant relationship test* is used. *See id.*; *GEICO Indem. Co. v. Crawford*, Case No. 5:13-231, 2014 WL 546760, at *2 (E.D. Ky. Feb. 10, 2014); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 187, 188 (1971).

If after applying the proper test (or relying upon a choice of law provision), the law of another state is found to govern, then there is one final step under Kentucky's choice of

law rules. The court must consider whether the other state's law is repugnant to a well-established and clearly defined public policy of Kentucky; if so, the court shall forgo applying that law and use Kentucky law instead. *See State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 35 (Ky. 2004); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b).

### *a.  The Underlying Substantive Area of Law*

State Farm contends that Georgel's claim is based on contract law. (Doc. # 84 at 5-6). In support of this position, State Farm cites numerous Kentucky cases that are factually on point, wherein the court held that a claim for UIM benefits does indeed sound in contract for purposes of choice of law. Georgel, on the other hand, asserts that his claim sounds in tort. (Doc. # 85 at 11). However, he does not cite any precedent to support this assertion; instead, for reasons not entirely clear, he criticizes the authority offered by State Farm for failing to establish that West Virginia tort law should govern the *accident itself*. For instance, with regard to a case involving an Indiana insurance policy, Georgel observes that "[a]t no time was it argued or did this Court determine that substantive Indiana tort and damage law applied to the *underlying accident*." (Doc. # 85 at 6) (emphasis added). Just as curiously, Georgel notes in summary that none of the decisions cited by State Farm "support the position that because an underinsured motorist claim has been asserted, the substantive tort law of the state where the policy was issued *applies to the underlying case*." (*Id.*) (emphasis added).

Thus, as far as the Court can tell, Georgel believes this motion somehow focuses on the initial claim in tort, and that, as a result, the choice of law analysis turns on the accident itself, as opposed to the dispute over UIM benefits. Georgel's understanding is

simply incorrect.

The current lawsuit before this Court is between two parties: Georgel and State Farm. The sole remaining claim is Georgel's request for payment of UIM benefits, and the fact that such benefits are governed by a contract for insurance is beyond any question. True, it may be necessary to determine proportionate fault as to the underlying accident, which will certainly involve principles of comparative negligence, but this exercise does not of itself manifest a separate claim in tort. Indeed, any such claim would have been dismissed along with Preece, leaving only the dispute over insurance coverage for this Court to decide. And regardless of Georgel's suggestion to the contrary, choice of law is determined by the *claim before the court*, not the sub-issues within that claim (such as the area of law within which a conflict is noted), and certainly not prior claims that have been dismissed from the action altogether.

This notion is clearly exemplified in *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875 (Ky. 2013). In that case, the automobile accident occurred in Kentucky, the insured was a resident of Pennsylvania; the vehicle was garaged in Pennsylvania; and the insurance contract was also written and purchased in Pennsylvania. *Id.* at 876. After the accident, the insured brought a claim for UIM benefits, however State Farm refused to pay based on a resident-relative exclusion contained within the policy. *Id.* at 878. Though such an exclusion was valid in Pennsylvania, it would be void against public policy in Kentucky. *Id.* Upon conducting a choice of law analysis, the court found that the claim in question sounded in contract. *Id.* Notably, in so finding, the court did not look to the accident itself (as Georgel would have this Court do). Nor was the substantive law of the identified conflict ever a factor. Rather, the court simply recognized

the lawsuit for what is was – an "insurance coverage dispute" – and therefore applied the most significant relationship test, in accordance with Kentucky's choice of law rules. *Id.*

Similarly, in *Petro v. Jones*, the accident occurred in Kentucky, while the insurance policy was purchased in Indiana, where the insured resided and where the car was maintained. *Petro*, 2013 WL 756756, at *6. Again, the court classified the claim for UIM benefits as a dispute in contract, and thus applied the most significant relationship test for purposes of choice of law. *Id.* at *5-6. In support of its holding, the court cited *Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579 (Ky. 1977), noting the same approach was taken in that case, "even though the accident that triggered the application of the [Indiana] insurance policies occurred in Kentucky." *Id.*[2]

In these cases, when faced with a dispute over UIM benefits, Kentucky courts have consistently held that the claim itself sounds in contract for purposes of choice of law. This finding is consistent with the Kentucky Supreme Court's discussion of UIM claims in general in *Kentucky Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797 (Ky. 2005). There, after a fatal automobile accident, the victims' estate filed a lawsuit against Kentucky Farm Bureau for payment of UIM benefits. *Id.* at 799. Although choice of law was not at issue, the court addressed whether it was proper to apportion fault pursuant to KRS §

---

[2] There are several other decisions that apply Kentucky's choice of law rules in the exact same manner. *See, e.g., Ward v. Nationwide Assur. Co.*, Case No. 2012-CA-000809, 2013 WL 5051677, at * 2 (Ky. Ct. App. Sept. 13, 2013) (noting with respect to the UIM claim at issue, "When the dispute, such as this one, is contractual in nature, we utilize the most significant relationship test.") (internal quotations and citation omitted); *Poore v. Nationwide Mut. Ins. Co.*, 208 S.W.3d 269, 271 (Ky. Ct. App. 2006) (same); *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 992 S.W.2d 855, 856-57 (Ky. Ct. App.1998) (same); *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 619-20 (Ky. Ct. App.1996) (categorizing a claim for UIM benefits as a "contract dispute" and therefore applying the most significant relationship test in determining in choice of law).

411.182,[3] even though "Appellees' action against KFB was based in contract." *Id.* at 801. The court held that the statute did not apply, explaining that while "UM and UIM actions involve aspects of tort law, in that the allocation of fault is a necessary prerequisite to coverage, our case law firmly establishes that the contractual nature of the claims is procedurally controlling." *Id.* Moreover, the court observed that "any payment by KFB would necessarily be made in performance of its *contractual obligation* to the Kruers, and neither would nor could be characterized as payment of legal damages pursuant to tort liability." *Id.* (emphasis added).

Finally, the separate treatment of a UIM benefits claim and the underlying claim in tort can be seen in *U.S. Fid. & Guar. Co. v. Preston*, 26 S.W.3d 145 (Ky. 2000). In that case, the accident occurred in Georgia while the insurance policy was issued in Kentucky. *Id.* at 146. A Georgia court disposed of the tort claim, applying the doctrine of modified comparative negligence and denying any recovery to Preston, who was found to be sixty (60) percent at fault. *Id.* Preston's insurer then sought a declaratory judgment in Kentucky regarding its obligation to pay UIM benefits. *Id.* Choice of law was not at issue in *Preston*; however, the court did hold that to apply Kentucky's doctrine of pure comparative fault would not offend principles of full faith and credit, explaining that the "right to recover UM benefits is not conditioned upon entry of judgment against the uninsured tortfeasor."[4] *Id.*

---

[3] KRS § 411.182 governs the allocation of fault, award of damages and effect of release in Kentucky tort actions.

[4] Georgel argues in his sur-reply that *Preston* is of no utility here because it concerns a claim for <u>un</u>insured benefits, rather than <u>under</u>insured benefits. (Doc. # 93 at 1). However, as the Kentucky Supreme Court explained in *Coots v. Allstate Ins. Co.*, "Underinsured and uninsured carriers should be treated similarly, as their purpose and the intent of their coverage is similar." 853 S.W.2d 895, 903 (Ky. 1993).

at 148. Notably, the policy in question contained almost the exact language at issue in this case, stating, "We will pay all sums the insured is *legally entitled to* recover as compensatory damages from the owner or driver of an uninsured motor vehicle." *Id.* at 147.

In summary, Kentucky's case law unequivocally demonstrates that a claim for UIM benefits is contractual in nature. Georgel attempts to sidestep this maxim, it seems, by emphasizing the underlying accident, and noting that the insurance policy necessitates a determination of proportionate fault. However, Kentucky courts recognize that even where the allocation of fault is a prerequisite to UIM benefits, the action itself nevertheless sounds in contract, and exists separately from the underlying claim in tort. Accordingly, the remaining claim in this case will be regarded as a dispute in contract for purposes of the following choice of law analysis.

### b. *Choice of Law for a Contract Claim*

As for the choice of law rules applying specifically to actions in contract, Kentucky has adopted the Restatement (Second) of Conflict of Laws. In *Crawford*, this Court explained the interplay among the two most prevalent sections.

> The traditional choice-of-law for a breach of contract claim is set out in §§ 187 and 188 of the Restatement (Second) of Conflict of Laws. *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 397-98 (6th Cir. 2000). Section 187 applies if there is a choice-of-law provision within the contract. Alternatively, § 188 – the most significant relationship test – applies when there is no such provision. *Id.*

*GEICO Indem. Co. v. Crawford*, Case No. 5:13-231, 2014 WL 546760, at *2 (E.D. Ky. Feb. 10, 2014). The Court will address each section in turn.

### I.     Choice of Law Provision

Pursuant to Section 187, "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1). This criterion is met "when there is an express term in the contract that controls the issues being litigated." *Crawford*, 2014 WL 546760, at *3. Georgel's policy does in fact contain a choice of law provision, which states, in pertinent part, "Without regard to choice of law rules, the law of the State of West Virginia will control . . . in the event of any disagreement as to the interpretation and *application* of any provision in this policy." (Doc. # 83-1 at 18) (emphasis added). However, the parties disagree as to whether or not this language contemplates the use of state law negligence rules in determining the extent of UIM benefits Georgel is "legally entitled" to under the terms of the policy.

State Farm's position is quite simple: the term "application" refers to any issue affecting the availability of UIM benefits, which includes the use of comparative fault principles in assessing the insured's right to recover. (Doc. # 84 at 8). In response, Georgel contends that if this provision was to apply under such circumstances, it could, and should, have been drafted with more exacting language. (Doc. # 85 at 4). According to Georgel, the provision is ambiguous at best, and thus under West Virginia law it should be construed narrowly to favor the insured. (Doc. # 85 at 3, n. 2). *See Flowers v. Max Specialty Ins. Co.*, 761 S.E.2d 787, 795 (W. Va. 2014).

The applicability of the choice of law provision is admittedly a close call. Given the paucity of controlling authority in this area, the Court will proceed to its analysis of § 188.

After all, if the Court finds that West Virginia law controls pursuant to the most significant relationship test, the § 187 analysis will be of no consequence.

### ii. The Most Significant Relationship Test

The most significant relationship test is contained at § 188, which states, "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1). The factors for a court to consider under § 188 include: "(a) the place of contracting; (b) the place of negotiation of the contract; © the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at § 188(2). Additionally, in *Poore v. Nationwide Mut. Ins. Co.*, the court explained "that in most cases the law of the residence of the named insured will determine the scope of the coverage." 208 S.W.3d 269, 271 (Ky. Ct. App. 2006) (citation omitted).

When applying this test, the Court finds that the proper choice of law here is clearly that of West Virginia. Georgel's claim for UIM benefits was made pursuant to a contract for insurance. That contract was negotiated and formed in West Virginia. The subject matter of the contract, Georgel's motorcycle, was garaged and maintained in West Virginia. Georgel himself is a resident of West Virginia, and though State Farm is headquartered in Illinois, one can reasonably assume that it has a place of business in West Virginia, seeing as State Farm insurance products are sold there. As to performance, the record does not indicate where claims are processed, and admittedly this could occur in any state. But in any event, Georgel has offered no evidence to suggest that his claim was processed in

Kentucky. In fact, Georgel has made no attempt at all to weigh any of the § 188 factors in favor of applying Kentucky law. Presumably, this is because the relationship between the contract for insurance and the state of Kentucky is not only insignificant, it is virtually nonexistent.

The same conclusion is reached when relying upon the myriad of case law cited herein.[5] In each case, the court was faced with a claim for UIM benefits stemming from an automobile accident that occurred in Kentucky. And in each case, the claimant was a resident of a different state, which was also the state where the insurance policy was issued and where the automobile was garaged and maintained. Without exception, the court found that, under the most significant relationship test, the law of the state where the policy was issued would control. Importantly, the manner in which those courts considered § 188 is equally applicable in this case. Thus, absent a clear basis in public policy for ruling otherwise, Georgel's claim for UIM benefits, including any issues arising therefrom (such as determining comparative fault), should likewise be governed by the law of the state in which the policy was issued – West Virginia.

---

[5] *See Petro v. Jones*, Case No. 11-151, 2013 WL 756756 (E.D. Ky. Feb. 27, 2013); *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875 (Ky. 2013); *Ward v. Nationwide Assur. Co.*, Case No. 2012-CA-000809, 2013 WL 5051677 (Ky. Ct. App. Sept. 13, 2013); *Poore v. Nationwide Mut. Ins. Co.*, 208 S.W.3d 269 (Ky. Ct. App. 2006); *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 992 S.W.2d 855 (Ky. Ct. App.1998); *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618 (Ky. Ct. App.1996). The Court recognizes that some of these decisions, for example *Ward* and *Hodgkiss-Warrick*, also consider exceptions based on public policy as part of the choice of law analysis, while others, *Snodgrass* and *Bonnlander*, are criticized for failing to do so. Nevertheless, these decisions are relied upon herein only to the extent they support two propositions: 1) that the UIM benefits claim in question sounds in contract, and 2) that based on the facts, the law of the state in which the policy was issued would govern according to the most significant relationship test.

### c. Public Policy Exception

Regardless of the outcome of a standard choice of law analysis, "courts in Kentucky 'have traditionally refused to apply the law of another state if that state's law violates a public policy as declared by the Kentucky legislature or courts.'" *GEICO Indem. Co. v. Crawford*, Case No. 5:13-231, 2014 WL 546760, at *3 (E.D. Ky. Feb. 10, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 35 (Ky. 2004)). This is not to say that a public policy exception will be appropriate any time "the outcome would be different under another state's law." *Id.* (citation omitted). Rather, it applies only where "the public policy is clearly 'expressed in the applicable law.'" *Id.* And with regard to a contract between private parties, moreover, there must be a "clear and certain statement of strong public policy in controlling laws or judicial precedent." *Id.*

Georgel urges this Court to recognize a public policy exception for Kentucky's doctrine of pure comparative fault. First, he cites cases that emphasize, in general terms, Kentucky's strong preference for applying its own laws. *See Wallace Hardware v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (noting Kentucky courts have a "provincial tendency" in choice of law matters); *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) ("The basic law is the law of the forum, which should not be displaced without valid reasons."). Then, relying on *United States Fid. & Guar. Co. v. Preston*, 26 S.W.3d 145, 148 (Ky. 2000), Georgel correctly notes that Kentucky's doctrine of pure comparative fault was enacted to promote the policy of allowing injured persons to recover despite being partially responsible for their own damages. (Doc. # 93 at 3). Finally, Georgel observes that he would be deprived of the benefit of this policy if the Court were to apply West Virginia law here. (*Id.*)

Yet, Georgel overlooks a key aspect of *Preston* that is not present under the facts at hand. In *Preston*, the insured – the party who stood to benefit from Kentucky law – was in fact a citizen of Kentucky. *Id.* at 146. By contrast, Georgel is not. As the Supreme Court of Kentucky explained in *Hodgkiss-Warrick*, the public policy exception requires a "well-founded rule of domestic policy established to protect the morals, safety or welfare of *our people*." 413 S.W.3d 875, 882 (Ky. 2013) (emphasis supplied). Further, the court noted that "[w]here no Kentucky resident has been affected, rarely will that standard be met." *Id; see also State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 42 (Ky. 2004) ("Kentucky has no interest in applying our public policy to provide benefits to Indiana residents who would not be entitled to them under Indiana law."). With the dismissal of Preece, this action no longer involves a Kentucky resident; thus, it would be improper to deviate from the standard choice of law rules in order to promote Kentucky's doctrine of pure comparative negligence.

In what appear to be additional public policy arguments, Georgel also asserts that applying West Virginia law at this point in the proceeding would lead to both illogical results and wasted judicial resources. (Doc. # 85 at 7-10). The Court finds it unnecessary to explore these arguments in great detail; suffice it to say that neither qualifies as a "clear and certain statement of strong public policy," and Georgel provides no case law to suggest otherwise. In fact, the Kentucky Supreme Court's discussion of public policy in *Preston* cuts directly against Georgel's position. In assessing whether to apply the laws of the state where the accident occurred versus those of the state in which the policy was issued, the court explained that using the former was "undesirable" because to do so would "cause [the] insurance policy to yield a variety of inconsistent results depending upon the laws of

other jurisdictions." *Preston*, 26 S.W.3d at 147. Overall, the Court sees no plausible basis for applying a public policy exception to the standard choice of law framework.

IV.     **Conclusion**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that State Farm's Motion for a Ruling on Choice of Law (Doc # 83), asking that West Virginia law govern this case, is **granted**.

This 30th day of October 2014.



G:\DATA\Opinions\Ashland\13-57 Granting Choice of Law.wpd