UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 13-57-DLB-EBA

PHILIPPE GEORGEL                                                                              PLAINTIFF

V.                               MEMORANDUM OPINION AND ORDER

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY         DEFENDANT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I.   INTRODUCTION

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Partial Motion for Summary Judgment. (Doc. # 163). In its motion, State Farm asks this Court to grant partial summary judgment in its favor on Plaintiff Philippe Georgel's claims for underinsured motorist benefits. Specifically, State Farm argues that Georgel is not entitled to recover damages for past lost wages or lost earning capacity for two main reasons: (1) there is a lack of sufficient evidence to support these damages and (2) the damages claims are based upon impermissible speculation. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2012, Georgel and three companions were riding their motorcycles near the city of Louisa, in Lawrence County, Kentucky. (Doc. # 116 at 2-3). The riders were traveling south on U.S. 23 when they arrived at the intersection of U.S. 23 and State Route 32. (Doc. # 116-4 at 3). As the group prepared to turn right, a Chevrolet pickup

1

truck approached from the east. *Id.* While his companions turned ahead of the oncoming truck, Georgel waited for the truck to pass and then made his turn. *Id.* Former Defendant Waynwright Preece drove the truck, which traveled between Georgel and his fellow riders. (Doc. # 116 at 2).

After turning right onto Route 32, a two-lane road separated by double-yellow dividing lines, Georgel was traveling in the westbound lane directly behind Preece. *Id.* According to Georgel, he continued on this path for approximately fifteen seconds when Preece began to slow his truck and pull over to the shoulder of the road. *Id.* Based on the truck's position and speed, Georgel assumed that Preece was presenting him the opportunity to pass and rejoin his companions, so he accelerated his motorcycle while staying in the westbound lane. (Doc. # 116-1 at 4). However, before he could pass the truck, Preece began to turn left towards Willow Drive, a road that intersects with Route 32 from the south. *Id.* Due to the proximity of the vehicles when Preece began his turn, Georgel was forced to brake hard and "lay his bike down" in order to avoid a collision. *Id.* He slid for approximately eighty feet and came to rest in a nearby field. (Doc. # 116-7 at 16). Georgel did not cross the double-yellow dividing lines until after his bike went down, and though he incurred significant injuries during the slide, he never made contact with Preece's truck. (*See* Doc. # 116-2 at 4).

Preece recalls the incident differently in certain key respects. While he admits to gradually slowing his truck, he states that he did so only to prepare for a left-hand turn onto Willow Drive, not because he intended to allow Georgel to pass him. *Id.* at 4-5. Moreover, Preece insists that his truck was completely within the westbound lane when he started the turn and did not enter the shoulder lane at any point. *Id.*; *see also* Doc. # 116-3 at 2.

Preece concedes that his turn signals were not operational and that some of his brake lights were not working, yet he contends that the accident was caused by Georgel's high rate of speed and failure to maintain a proper lookout. (Doc. # 116-3 at 2-3).

On May 2, 2013, Georgel filed suit in this Court, seeking damages for injuries he sustained as a result of the Preece's alleged negligence.  (Doc. # 1 at 2-4, ¶ 8-13). Because Preece was underinsured, Georgel also named his own insurer, State Farm, as a Defendant.  Georgel's motorcycle is covered by a State Farm policy that includes underinsured motorist benefits. (*Id.*) On February 6, 2014, Preece was dismissed from the case by agreed order, at which point Georgel chose to proceed against State Farm on all claims asserted. (Docs. # 57 and 58).  Since then, the parties have completed discovery and the Court has entered two Memorandum Opinions and Orders: one granting State Farm's Motion for Choice of Law, which concluded West Virginia law governs the instant dispute (Doc.# 114); the other, granting in part and denying in part Georgel's Motion to Exclude Opinions of State Farm's Expert Witness Alfred Cipriani. (Doc. # 147).

With the trial approaching, State Farm filed the instant Motion for Partial Summary Judgment, contending it is entitled to partial summary judgment on Georgel's claims for underinsured motorist benefits, to the extent that he seeks to recover damages for past lost wages and future lost earning capacity. (Doc. # 163).  Specifically, State Farm argues that Plaintiff's has done little more than speculate about the nature and extent of these damages.  That Motion is fully briefed and ripe for review. (Docs. # 169 and 178).

On March 1, 2016, the Court heard oral argument on the Motion, at the conclusion of which the Court orally denied State Farm's Motion.  By this Memorandum Opinion and Order, the Court gives its reasons for doing so.

### III. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law. *Id.* Once a party files a properly supported motion for summary judgment, by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

#### B. Plaintiff's Damages

Georgel, a professor at Marshall University, seeks damages for lost wages and lost earning capacity. Georgel has returned to work and testified he is "able to fulfill his contractual obligations ... with respect to his teaching duties." (Doc. # 163-1, p. 3). However, he claims that his "ongoing pain inhibits full concentration for writing intensive tasks such as research proposals and the preparation of scientific manuscripts." (Doc. # 163-2, p.4). Because he cannot perform writing intensive tasks, Georgel claims that he is unable to obtain supplemental income from researching and writing grant proposals. *Id.*

"To ward against speculative, abstract or purely theoretical claims, the trial court bears the responsibility for examining the evidence in each case in order to withhold such flawed claims from jury consideration." *Cook v. Cook*, 607 S.E.2d 459, 466 (W. Va. 2004). Although the Court is "well equipped to test the evidence actually adduced on the issue against any contention that such evidence is too speculative, abstract or theoretical to support the claim asserted, the Court must take care not to "weigh the evidence and determine the truth of the matter."  *Id.* at 467; *see also Anderson*, 477 U.S. at 249. Accordingly, in adjudicating this Motion, the Court will draw all inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In order to prove his case, Georgel "must allege the four basic elements of negligence - duty, breach, causation, and damages." *Hersh v. E-T Enter., Ltd. P'ship*, 752 S.E.2d 336, 341 (W. Va. 2013).  Specifically, "the general rule with regard to proof of damages is that such proof cannot be sustained by mere speculation or conjecture." *Spencer v. Steinbrecher*, 164 S.E.2d 710, 711 (W. Va. 1968); *see also Sisler v. Hawkins*, 217 S.W.2d 60 (W. Va. 1975).  The burden of proof is always upon the plaintiff claiming damages to show the amount with reasonable certainty. *See Jones v. Credit Bureau of Huntington, Inc.*, 399 S.E.2d 694, 698 (W. Va. 1990) citing *Stone v. Gilbert*, 56 S.E.2d 201, 205 (W. Va. 1949).  These principles apply to present damages (like past lost wages), as well as future damages (such as future lost earning capacity).  Because the parties devoted most of their briefing to the issue of future lost earning capacity, the Court will address that issue first, and then turn to the question of past lost wages.

### 1. Future Lost Earning Capacity

Future damages "are those sums awarded to an injured party for, among other things: (1) residuals or future effects of an injury which have reduced the capability of an individual to function as a whole [person]; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses." *Jordan v. Bero*, 210 S.E.2d 618, 623 (W. Va. 1974). To permit a jury to award an injured party future damages, the plaintiff must establish two elements: (1) permanent injury and (2) damages to a reasonable degree of certainty. *See Adkins v. Foster*, 421 S.E.2d 271, 274 (W. Va. 1992).

The nature of the injury sustained is critical to this analysis:

> "Where an injury is of such a character as to be obvious, the effects of which are reasonably common knowledge, it is competent to prove future damages either by lay testimony from the injured party or others who have viewed his injuries, or by expert testimony, or from both lay and expert testimony, so long as the proof adduced thereby is to a degree of reasonable certainty. But where the injury is obscure, that is, the effects of which are not readily ascertainable, demonstrable or subject of common knowledge, mere subjective testimony of the injured party or other lay witnesses does not provide sufficient proof; medical or other expert opinion testimony is required to establish the future effects of an obscure injury to a degree of reasonable certainty."

*Jordan*, 210 S.E.2d at 623; *See also Gerver v. Benavides*, 530 S.E.2d 701, 706 (W. Va. 1999).

A "plaintiff seeking damages for future losses in the form of specific income or capacity to earn a living, including lost opportunity, must show how his or her economical situation has been impeded." *Cook*, 607 S.E.2d at 466-67 (citing 22 Am.Jur.2d Damages § 340 (2003)). "Such proof is necessary to assure adherence to the principle underlying compensatory damages: placing the injured party in the same, not better, financial position he or she would have been in but for the negligent act." *Id.* The adverse future effect of an

injury on earning capacity can be proven in two ways. *See Gerver*, 530 S.E.2d at 706. "First, a litigant may place before the jury a specific monetary value on damages for lost earning capacity." *Id.* However, the specific monetary value "must be established through expert testimony" regarding "the existence of a permanent injury, its vocational effect on the plaintiff's work capacity, and an economic calculation of the monetary loss over the plaintiff's work-life expectancy reduced to a present day value." *Id.*(citing *Liston v. Univ. of W. Va. Bd. of Trustees*, 438 S.E.2d 590 (W. Va. 1993)). Alternatively, "a litigant may choose not to quantify the loss of earning capacity, but instead allow the jury to award a general amount of damages for lost earning capacity." *Id*. To do this, "the plaintiff must establish that there exists a permanent injury which can be reasonably found to diminish earning capacity. The plaintiff may then rely on lay or the plaintiff's own testimony to acquaint the jury with the injury's impact on his or her job skills. When this is done, the jury may assess a general amount of damages for diminished earning capacity.'" *Id*.

In this case, Georgel has returned to work as a professor at Marshall University, but claims his ongoing pain inhibits the level of concentration needed to research and write grant proposals. (*See* Doc. # 163-2, p.4). State Farm argues that Georgel has failed to produce sufficient evidence to support his request for lost earning capacity damages. Specifically, State Farm asserts that Georgel has not proved his alleged damages to a reasonable degree of certainty because he is unable to establish the requisite causal connection between the automobile accident and the alleged damages. Additionally, State Farm takes issue with Georgel's failure to retain an expert vocational witness to quantify his lost earning capacity and reduce such damages to present value. (*See* Doc. # 164, p. 3). In response, Georgel claims he is not required to present expert testimony to quantify

and reduce to present value any lost earning capacity claim. Instead, Georgel asserts that the testimony of his experts and himself, permit a jury to find to a reasonable degree of certainty that he suffers from a permanent injury and that the injury has impaired his future earning capacity.[1]

State Farm further complains that Georgel's claim for future lost earning capacity is supported by nothing more than impermissible speculation. In support of this assertion, State Farm highlights the uncertain nature of the grant proposal process and any income derived therefrom. State Farm relies on Georgel's deposition testimony admitting that "the grant process is a very lengthy and unpredictable process," "[n]ot all grant proposals are accepted," and "the rules for the amount that can be given as salary are actually quite gray." (Doc. # 163-4, p. 3). State Farm also points to Georgel's discovery responses, which "revealed that his yearly success rate in obtaining grants from 2007 through 2012 varied wildly from a 100% success rate one year to a 0% success rate the next." *Id.* Lastly, State Farm argues there are additional variables involved in Georgel's ability to obtain supplemental grant income, which make Georgel's lost earning capacity claim even more speculative, including: "(1) the amount of resources, such as the number of assistants that are available for the grant seeking process, (2) whether or not a grant will be awarded once a proposal has been made, and (3) the amount of additional salary that the University will provide to the professor obtaining the grant." *Id.* at 4.

---

1  Plaintiff's evidence consists of testimony by Dr. Steve Novotny, one of his treating orthopedic surgeons, that Plaintiff's pain is permanent, as well as the testimony of Dr. Ben Kibler, another one of Plaintiff's treating orthopedic surgeons, who has opined that "there will be some limitations of functional capabilities, and given the nature of his weakness and his lack of motion, there will be difficulty with repetitive overhead activities." (Doc. # 169, p. 3).

To make a claim for lost earning capacity, Georgel must prove two things: (1) that the injury is permanent and (2) damages to a reasonable degree of certainty. *See Adkins*, 421 S.E.2d at 274.  Further, because "ongoing pain" is an obscure injury, Georgel must present positive "medical evidence to a degree of reasonable certainty that the injury is permanent ... to take the question to the jury and to support an award of damages for the future effects of such injury." *Gerver*, 530 S.E.2d at 706.  To meet this requirement, Georgel has presented expert witness testimony that "the pain around [his] shoulder ... will most likely be permanent." (Doc. #169-1, p.2).  Therefore, Georgel has presented sufficient evidence to establish the first element - that his injury is permanent.

Georgel has also presented sufficient evidence to satisfy the second requirement - proving his damages to a reasonable degree of certainty.  Georgel intends to rely on his own testimony to "acquaint the jury with the injury's impact on his ... job skills,"[2] the alternate route for proving the adverse future effect of an injury. *Id.*(citing *Liston*, 438 S.E.2d at 594).  While West Virginia courts have advised that "prudent plaintiff's counsel would seek to introduce vocational evidence in addition to medical evidence ... to assist the jury in ascertaining the extent and permanency of the plaintiff's alleged inability to engage in gainful employment," the cases make clear that such expert testimony is not required to prove the adverse future effects of an injury. *Adkins*, 421 S.E.2d at 276.

---

2   Georgel has an expert witness who intends to testify that Georgel will have "some limitations of functional capabilities." (Doc. # 169-2, p. 2).  Because this opinion is rather vague, the Court is unable to say whether such testimony could be considered expert testimony regarding the injury's "vocational effect on the plaintiff's work capacity." *Gerver*, 530 S.E.2d at 706 (citing *Liston*, 438 S.E.2d at 591 (W. Va. 1993))  However, because Georgel has not offered expert testimony for an "economic calculation of the monetary loss over the plaintiff's work-life expectancy reduced to a present day value," the Court assumes Georgel has elected to proceed via the second route, relying on lay testimony. *Id*.

9

Specifically, this Court finds *Gerver v. Benavides*, 530 S.E.2d 701 (W. Va. 1999), to be particularly instructive. In *Gerver*, plaintiff-patient brought suit against a physician for medical malpractice after sustaining injuries during a vasectomy procedure, and sought damages for lost earning capacity. To prove his lost earning capacity damages due to an obscure injury (chronic pain), plaintiff chose not to quantify the loss of earning capacity and produced only his own testimony of the adverse future effect of his injury. After presenting expert testimony to establish his injury and pain were permanent, the plaintiff testified that "because of his chronic pain and his dependence on methadone to function, he was unable to return to gainful employment." *Gerver*, 530 S.E.2d at 706. Then, the "jury was presented with records showing the plaintiff's past wages and benefits ... with evidence that the plaintiff could no longer earn these wages and benefits; and with evidence that the plaintiff was a 34 year-old-man with a life expectancy of 41.1 more years." *Id*. at 706-707. Therefore, the Supreme Court of Appeals of West Virginia determined that the "plaintiff produced evidence through his physicians that a jury could find, to a reasonable degree of certainty, that the plaintiff suffered from a permanent injury" and "that the plaintiff's injury eliminated his future earning capacity."

Accordingly, plaintiff's expert testimony proving permanent injury, combined with his own testimony that his ongoing pain prevents him from obtaining supplemental grant income, is sufficient to establish the requisite causal connection and damages to reasonable degree of certainty. While there is a significant amount of speculation involved in Georgel's lost earning capacity claim, there is a level of speculation inherent in every

claim for future lost wages.³ Drawing all inferences in Georgel's favor, there exists a genuine issue of material fact, which must be resolved by the jury. However, such evidence is sufficient only to allow the jury to award a general amount of damages for lost earning capacity; Georgel will not be able to place a specific monetary value before the jury. *Gerver*, 530 S.E.2d at 706.

### 2. Past Lost Wages

"A claim for loss of past earnings is predicated on evidence that, due to the actions of the defendant, the plaintiff has lost earnings between the time of injury and the present date." *Hershberger v. Ethicon Endo-Surgery, Inc.*, 2:10-CV-00837, 2012 WL 1067941, *8 (S.D. W. Va. Mar. 29, 2012)(citing Ronald Eades, Jury Instructions on Damages in Tort Actions §6.13(3) (5th ed. 2011)). "Under this theory, the plaintiff is entitled to be compensated for the loss of the amount the jury finds the plaintiff was reasonably certain to have earned up to the date of trial," had plaintiff not been injured. *Id.* Specifically, "evidence in the wage loss claim reflects loss of specific opportunities, such as those presented by an existing job."*Cook*, 607 S.W.2d at 466. Proof typically shows past wage and future prospects in the job, coupled with proof that the plaintiff can no longer work or can work only part time." *Id.*

State Farm again argues that Georgel has "failed to establish any sort of causal relationship between any specific lost wages" and claims such damages amount to

---

3 West Virginia courts have found some future lost earnings claims to be so speculative as to prevent an award of future lost earning capacity damages. *See e.g. Dowey v. Bonnell*, 380 S.E.2d 453 (W. Va. 1989) (Court determined that plaintiff's testimony claiming "he could expect to find employment six months following completion of his degree" was "based upon mere speculation and conjecture" and set aside the jury's verdict awarding future lost wages.). Here, Georgel has evidence of past earnings from which to base an award of future lost earning capacity.

"impermissible speculation." (Doc. # 164, p. 7). In response, Georgel points to the expert and lay opinion testimony discussed above in support for his past lost wages claim, including the requisite causal connection. (Doc. # 196, p. 3). Georgel also highlights his past grant earnings history, as well as the documentation provided to State Farm outlining past grants submitted, awarded, and income earned therefrom, to refute State Farm's argument that his damages are too speculative. (*Id.* at p. 4-9).

Although the parties disagree about what conclusions can be drawn from the proof Georgel has presented, he has produced the type of evidence which supports a past lost wage claim - the loss of specific opportunities presented by an existing job. Furthermore, as discussed in detail above, Georgel has put forward expert witness testimony and his own testimony regarding his injury, pain, and the resulting adverse effect on his ability to research and write grants. Crediting Georgel for the expert and lay witness testimony, as well as the documentation of past grant earnings history and success, there is more than a scintilla of evidence in support of his position. Therefore, providing Georgel the benefit of all favorable inferences which reasonably may be drawn from the evidence, he has presented sufficient proof to create a genuine issue of material fact.

IV.  **CONCLUSION**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Defendant's Partial Motion for Summary Judgment (Doc. # 163) is **denied**.

This 2nd day of March, 2016.



G:\DATA\Opinions\Ashland\13-57 MOO re PMSJ.wpd